

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | | |
|---|---|---|
| STEVEN M. TUCCI, an individual, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | **Case No.:** 8:00CV785-T-17E<br>**Judge:** Elizabeth A. Kovachevich |
| SMOOTHIE KING FRANCHISES, INC., a Louisiana corporation, and NICOLE SKAGGS, an individual, | ) ) ) ) | **Magistrate:** Thomas B. McCoun III |
| Defendants. | ) ) | |

_____/

## DEFENDANT SMOOTHIE KING FRANCHISES, INC.'S
### RESPONSE TO PLAINTIFF'S OBJECTION TO COSTS

Defendant, Smoothie King Franchises, Inc. ("**Smoothie King**"), responds to Plaintiff's Objections to Costs, and says:

## I.    **Preliminary Statement**

Smoothie King is a franchisor of blended fruit **drink and** nutritional product stores. Plaintiff, a shareholder of a Smoothie King franchisee, **brought this** antitrust and intentional tort action based upon, in essence, an allegation that his signature **was** forged on certain guarantees of obligations of the franchisee.

Smoothie King moved to dismiss Plaintiff's **Complaint on** December 20, 2001. This Court ruled on Smoothie King's Motion to Dismiss on July **3, 2002,** dismissing all of Plaintiff's claims against Smoothie King with prejudice. In the **interim, Smoothie** King was required to complete discovery, as discovery closed on June 28, 2002, **shortly** before the Court's ruling on Smoothie King's Motion to Dismiss. Accordingly, **Smoothie** King prepared its case for



summary judgment and for trial, including retaining a handwriting expert, taking depositions, and undertaking normal investigation of Plaintiff's claims. As set forth in Smoothie King's Bill of Costs, reimbursement was sought for the items that can be properly charged to Plaintiff, which amounted to $6,207.66.

Plaintiff prematurely challenges the costs sought by Smoothie King by filing his "Objection to Costs," which is properly treated as a Rule 54(d)(1) motion for review of a costs judgment entered by the clerk.[1] By his filing, Plaintiff objects to virtually every item of cost sought by Smoothie King, save $281.10 (giving no explanation as to how Plaintiff arrived at that figure).

Smoothie King concedes that $123.55 of its scheduled costs are addressed in a now-satisfied sanctions award to Smoothie King. However, the remaining costs, totaling $6,084.11, are properly awarded to Smoothie King.

## II.     Argument

Smoothie King will address the objections in the order presented by Plaintiff.

### A.     Fees to the Court Reporter for Transcription

#### 1.     Plaintiff's General Objections

Plaintiff objects generally to all court reporter fees on grounds that deposition transcripts were not used in Smoothie King's Motion to Dismiss. However, the appropriate standard for determining if the costs are taxable is whether or not the transcript was "necessarily obtained for use in the case." 28 U.S.C. §1920(2)(emphasis supplied); Desisto College, Inc. v. Town of Howey-in-the-Hills, 718 F. Supp. 906, 912 (M.D. Fla. 1989). The necessity of a deposition is

---

[1] The proper procedure would have been for the clerk to enter judgment on Smoothie King's Bill of Costs, and for Plaintiff to then seek review of the costs awarded. See F.R.C.P. 54(d)(1). In this case, the clerk has not yet entered a costs judgment, but Plaintiff has already registered his objections.

determined in light of the facts known at the time the deposition was taken, *i.e.*, whether it was then reasonably necessary for trial preparation. Desisto, **718 F. Supp.** at 912; Jop v. City of Hampton, 163 F.R.D. 486, 488 (E.D. Va. 1995). Indeed, contrary to Plaintiff's suggestion, the Eleventh Circuit has rejected a blanket rule that a deposition must be admitted into evidence (or "used," in Plaintiff's parlance) in order to be recoverable. Desisto, 718 F. Supp. at 912 (citing Murphy v. City of Flagler Beach, 761 F.2d 622, 631 (11th Cir. 1985)).

Furthermore, the disposition of a case prior to trial does not preclude the taxation of costs. See id. ("disposition of a case on a motion for summary judgment is no impediment to an award of costs."); see also Blevins v. Heilig-Meyers Corp., **184** F.R.D. 663, 666 (M.D. Ala. 1999) ("'the determination of necessity must be made in light of the facts known at the time of the deposition, without regard to any intervening developments that later rendered the depositions unneeded for further use.'")(quoting Hudson v. Nabisco Brands, Inc., 758 F.2d 1237, 1243 (7th Cir. 1985)); Board of Directors, Water's Edge v. Anden Group, 135 F.R.D. 129, 132 (E.D. Va. 1991)(holding that costs for depositions may be taxed even where there is a merits disposition short of full trial).

With the benefit of hindsight, Plaintiff argues that this Court should find as unnecessary virtually all of Smoothie King's costs. The Desisto court squarely rejected this position, stating

> It is the foolhardy litigant who, although believing in the strength of a dispositive legal issue, conducts no discovery into an opponent's allegations or discovery on alternative theories. The defendants in this case vigorously pressed their legal theories while at the same time conducting discovery on Plaintiff's allegations. This Court cannot now state that such discovery was unnecessary in light of the extraordinary relief sought by the plaintiffs and the derogatory nature of the plaintiffs' allegations.

Desisto, 718 F. Supp. at 912.

In this case, Plaintiff claimed that Smoothie King conspired to restrain competition in violation of state and federal antitrust laws, and also that Smoothie King committed numerous intentional torts. Plaintiff demanded millions of dollars in damages. Such a lawsuit, by its very nature, must be taken seriously. Moreover, the facts of this lawsuit are required to be disclosed (by federal law) to prospective franchisees, making a favorable disposition all the more essential to Smoothie King's continued business operations. It was therefore critical for Smoothie King to take depositions, to retain an expert, and to investigate Plaintiff's claims in order to prepare this case for summary judgment and for trial. Smoothie King could not reasonably rest solely on its Motion to Dismiss.

### 2. *The Deposition Costs for George Famiglio Are Properly Excluded*

Plaintiff is correct that the fees for the deposition of Mr. Famiglio, which were addressed in a prior sanctions award to Smoothie King, are now satisfied[2] and are properly excluded as costs. Accordingly, Smoothie King's costs application should be reduced by $123.55 ($40.00 witness fee; $83.55 transcript).

### 3. *The Deposition Costs for Jean Joannie Berrie and Peter Candler Are Properly Included*

Plaintiff argues that Ms. Berrie's and Mr. Candler's deposition costs should be excluded because "their testimony as expert witnesses was not used at trial." Again, this is an incorrect statement of the standard for taxation of deposition costs. Rather, the standard is whether or not the depositions were reasonably necessary at the time. Jean Berrie was Plaintiff's disclosed handwriting expert; Peter Candler was co-defendant Nicole Skaggs's handwriting expert. Plaintiff, of course, fails to argue that depositions of these experts were not reasonably necessary

---

[2] Plaintiff satisfied these costs *subsequent* to Smoothie King's filing of its Bill of Costs.

at the time. Indeed, they were both taken shortly before the close of discovery and were undoubtedly necessary -- if not essential -- to Smoothie King's preparation for trial and summary judgment. Given the critical importance of these handwriting experts to Plaintiff's underlying claim of forgery, their depositions were "necessarily obtained" for use in the case. Thus, the costs of these depositions should be taxed.[3]

4.      *Fees for the Depositions of John A. Rocca, Richard Leveille, Jr., Mari Tucci, Quentin Whitrock, Brad Long and Lorissa Hooper*

Plaintiff's final objection to taxing court reporter fees asserts that the depositions of John A. Rocca, Richard Leveille, Jr., Mari Tucci, Quentin Whitrock, Brad Long, and Lorissa Hooper were taken only for "investigative" purposes, and wee otherwise unnecessary. Plaintiff's Rule 26 Disclosures (copy attached as Exhibit "A") identified Mari Tucci, Brad Long, Lorissa Hooper, and the designated corporate representative for Smoothie King (Richard Leveille) as persons having knowledge in support of Plaintiff's claims. John Rocca was Plaintiff's business partner and was identified repeatedly in Plaintiff's interrogatory answers 12 and 16 (copy attached as Exhibit "B") as having knowledge of events alleged in the complaint. Quentin Whitrock was a witness identified on Smoothie King's Rule 26 disclosures who was deposed by the Plaintiff. Smoothie King seeks reimbursement for a copy of this transcript because he testified as to the date notice was given to Smoothie King of Plaintiff's contention of forgery, a critical event for purposes of Smoothie King's summary judgment. In sum, there can be no doubt that depositions transcripts for each of the foregoing witnesses was "necessarily obtained" for use in the case, and that the costs of those transcripts should be awarded to Smoothie King.

---

[3]      Plaintiff also states, without explanation, that costs for Ms. Berrie's deposition should be denied because it was "unduly prolonged." No authority is offered for this proposition. Furthermore, Ms. Berrie's deposition lasted approximately three hours, including breaks, and was not "unduly prolonged."

**B.      Fees for Witnesses**

*1.      Fees for Expert Witnesses*

Plaintiff objects to the fees paid to Plaintiff's handwriting expert Jean Joanne Berrie & Associates for appearing for deposition, as well as to the fees Smoothie King incurred by retaining its handwriting expert -- Smith Consultants. While Plaintiff correctly states the general rule that expert witness fees are not allowable beyond the statutory amount (see, e.g., Morrison v. Reichhold Chemicals, Inc., 97 F.3d 460, 462 (11th Cir. 1996)), courts have discretion to deviate where the circumstances warrant. Nemmers v. City of Dubuque, 764 F.2d 502, 506 (8th Cir. 1985)(upholding the taxation of expert fees because the expert's testimony had been "indispensable to the determination that plaintiff's property had been 'taken'"); Coleman v. City of Omaha, 714 F.2d 804, 809 (8th Cir. 1983) (approving taxation of expert fees "when the expert's testimony was crucial to the issues decided"). Here, the authenticity of Plaintiff's signature was central to his claims, and expert testimony would have been indispensable at trial to the jury's determination on that issue. Furthermore, Plaintiff's expert, Ms. Berrie, refused to allow Smoothie King to depose her unless it paid her a $400.00 fee. Expert fees in this case should be taxed because of the complexity of the area of expertise and because such testimony was crucial to both Plaintiff's allegations of forgery and to Smoothie King's defense. Under the special circumstances presented here, an exception to the general rule regarding the taxation of expert fees is warranted, and is made particularly appropriate because of the very questionable legitimacy of Plaintiff's claims, as evidenced by this Court's dismissal, with prejudice, on Smoothie King's motion. See Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998)(affirming sanction of expert fees as part of court's inherent authority to fashion an appropriate sanction for conduct which abuses the judicial process).

## C.    Fees for Exemplification and Copies

### 1.    Costs of Copies of Exhibits for the Depositions of John A. Rocca, Richard Leveille, Jr., and Plaintiff Steven Tucci

Plaintiff's objections to the costs of exhibits made for the depositions of John A. Rocca, Richard Leveille, Jr., and Steven Tucci are without merit. Rather, such exhibits were necessary for use in this case and are thus taxable. Photocopies that are "necessary to the maintenance of [an] action" are recoverable under 28 U.S.C. §1920(4), and include copies of exhibits. Desisto, 718 F. Supp. at 913. As discussed above, the depositions of Mr. Rocca and Mr. Leveille were necessary for use in this case. Accordingly, the documents comprising exhibits to these depositions are similarly characterized. Finally, Plaintiff erroneously states that the deposition of Plaintiff was not necessary for this case; arguably, there was no deposition *more* necessary to this case than that of Plaintiff Tucci. See Jop, 163 F.R.D. at 488 (noting that defendant's failure to depose the plaintiff would have bordered on legal malpractice). Indeed, Plaintiff acknowledges the importance of Plaintiff Tucci's deposition in that he did not object to the court reporter fees associated with his deposition.

### 2.    Costs of Copies of Plaintiff's Rule 26 Disclosures and Defendant's Response to Plaintiff's Motion to Enlarge

Plaintiff lastly objects to the cost of copies of Plaintiff's Rule 26 disclosures and Smoothie King's response to Plaintiff's Motion to Enlarge Time. Because these copies were necessary for use in the case, the costs are unquestionably taxable. Contrary to Plaintiff's representations, the test is not whether or not these items were used in Smoothie King's Motion to Dismiss. Rather, photocopies are taxable under 28 U.S.C. §1920(4) if they are "necessary to the maintenance of [an] action." Desisto, 718 F. Supp. at 913. Taxable photocopies include copies of pleadings, documents produced to the opposing party, correspondence; copies for

discovery; and copies of documents prepared for the court. <u>Desisto</u>, 718 F. Supp. at 913. While Plaintiff made documents available to Smoothie King pursuant to Rule 26, it did not provide Smoothie King with a copy of those documents. Smoothie King was forced to retain a service to pick up and copy Plaintiff's Rule 26 disclosures, which, by their very nature, are necessary to the maintenance of an action. Finally, the copies (including copies of caselaw) of Smoothie King's response to Plaintiff's Motion to Enlarge Time were also necessary because they were made pursuant to the Court's Standing Order of Procedure. <u>See</u> <u>Desisto</u>, 718 F. Supp. at 913 ("documents prepared for the courts' consideration are recoverable.")

## III. <u>Conclusion</u>

Each deposition taken in this action was reasonably necessary at the time it was taken. As a result, the cost of each is appropriately taxed as a reasonable cost. However, Smoothie King concedes that the itemized fees for George Famiglio, Jr. was addressed in a now-satisfied sanctions award and should be disregarded. And, although Smoothie King agrees that the general rule is not to allow the taxation of expert fees, the highly suspect legitimacy of Plaintiff's claims, as well as the central role handwriting experts would have played at trial, justifies taxation of such costs in favor of Smoothie King.

In conclusion, adjusting for the George Famiglio, Jr. costs, Smoothie King is entitled to an award of costs in the amount of $6,084.11. It is requested that the Court direct the Clerk to enter of Judgment in that amount in favor of Smoothie King and against Plaintiff.

Philip V. Martino
Florida Bar No.: 0079189
Christian C. Burden
Florida Bar No.: 0065129
**PIPER RUDNICK LLP**
101 East Kennedy Boulevard; Suite 2000
Tampa, Florida 33602
813/229-2111
813/229-1447 - Fax

Norman M. Leon
**PIPER RUDNICK**
203 North LaSalle Street, Suite 1800
Chicago, Illinois 60601
312/368-4000
312/236-7516 – Fax
Attorneys for Defendant Smoothie King

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by depositing same in the United States mail, postage prepaid, to:

William Randolph Klein, Esquire
**W.R. KLEIN, P.A.**
1900 Main Street
Suite 310
Sarasota, Florida 34236
Attorneys for Plaintiff

Nicole Skaggs
3810 75th Street West, #105
Bradenton, Florida 34209
Defendant *pro se*

on this 5th day of August, 2002.

Attorney

9

# EXHIBIT

# A

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

STEVEN M. TUCCI,
an individual

                              Plaintiff,

v.                                          CASE NO.: 8:00CV785-T-17E

SMOOTHIE KING FRANCHISES, INC.,
a Louisiana Corporation, and NICOLE
SKAGGS, an individual.

                              Defendants.
_____/

## INITIAL DISCLOSURES

Pursuant to Case Management and Scheduling Order issued by this Court on October 31, 2001 and Fed.R.Civ.P, Rule 26(a)(a), Plaintiff STEVEN M. TUCCI, by and through his undersigned counsel, provides the following initial disclosures:

1.      Fed.Civ.P, Rule 26(a)(1)(A) – The name and, if known, address and telephone number of each individual likely to have discoverable information that Plaintiff may use to support his claims.  The following individuals are likely to have discoverable information regarding Plaintiff's personal and financial participation in the Sarasota Smoothie King Franchise Store:

        a.      Marie E. Tucci
                1447 Peregrine Point Drive
                Sarasota, FL 34231
                (941) 925-9501

        b.      Brad E. Long
                Long Property Group, Inc.
                3800 Tamiami Trail South, Suite 312
                Sarasota, FL 34239
                (941) 954-1102

        c.      Eric F. Long
                Long Property Group, Inc.
                3800 Tamiami Trail South, Suite 312
                Sarasota, FL 34239
                (941) 954-1102

12-4

   d.   Corporate Representatives
        Smoothie King Franchises, Inc.
        2400 Veterans Memorial Boulevard, Suite 110
        Kenner, LA 70062

   e.   Lorissa Hooper
        Unknown

   f.   Dawn LeBlanc (Saladino)
        Unknown

2.    Fed.R.Civ.P, Rule 26(a)(1)(B) – A copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the Plaintiff that may be used to support his claims:

   a.   Partial corporate and financial records of Sarasota
        Smoothie King Franchise store, located at the office of the
        undersigned counsel.

   b.   Prior transcripts of depositions and Exhibits of all the
        individuals named in Item 1 above (except the Corporate
        Representatives of Smoothie King Franchises, Inc.) taken
        in conjunction with the case filed in the circuit court of the
        twelfth judicial circuit in and for Sarasota, Florida, Case No.
        98-3474-CA-01, located at the office of Carpenter Court
        Reporting, P. O. Box 49341, Sarasota, FL 34230, (941)
        955-0404.

3.    Fed.R.Civ.P, Rule 26(a)(1)(C) – A computation of damages claimed by the Plaintiff of $150,000.00 plus attorney fees and costs (all available supporting documents are located at the office of the undersigned counsel) is as follows:

   a.   $50,000.00, loss of investment in the Sarasota Smoothie
        King Franchise store, plus any lost share of profits to be
        determined through discovery and trial.

   b.   $50,000.00, loss resulting from forced sale of Plaintiff's
        interest in the R. T. Smoothie store in Brandenton, Florida.

   c.   $50,000.00, loss resulting from the forced sale of Plaintiff's
        interest in the R. T. Smoothie store in Port Charlotte,
        Florida.

4.    Fed.R.Civ.P, Rule 26(a)(1)(D) – Plaintiff has no knowledge of any insurance agreement under which an insurance business may be liable to satisfy part of

2

all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

5. Fed.R.Civ.P, Rule 26(a)(2)(C) – Plaintiff intends to call Jean Joanne Berrie, BCDE, CFE, of J.J. Berrie & Associates, Inc., 6223 Bonaventure Court, Sarasota, Florida 34243, (941) 359-3201 as a forensic document examiner for purposes of conducting a document examination and handwriting comparison to show that Plaintiff's alleged signatures on various documents were not Plaintiff's signatures.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served by U.S. Mail, first class postage prepaid, on Defendant Nicole N. Skaggs, Defendant, Pro Se, at 3810 75th Street West #105, Bradenton, FL 34209 and Roland Baggot, Corporate Counsel, Smoothie King Franchises, Inc. at 2400 Veterans Memorial Boulevard, Kenner, LA 70062 this 4th day of December 2001.

W. R. Klein, P.A.

Roy W. Howard
Florida Bar No. 0170445
1900 Main Street, Suite 310
Sarasota, FL 34236
(941) 365-1930
Fax (941) 953-3685
Attorney for Plaintiff

3

# EXHIBIT

# B

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

STEVEN M. TUCCI,
an individual,

        Plaintiff,                    CASE NO. 8:00-CV-785-T-17TBM

v.

SMOOTHIE KING FRANCISES, INC.,
a Louisiana Corporation, and NICOLE
SKAGGS, an individual.

        Defendants.

_____/

## PLAINTIFF STEVEN M. TUCCI'S ANSWERS TO SMOOTHIE KINGS INTERROGATORIES TO PLAINTIFF

To:        Smoothie King Franchises, Inc.; and Nicole Skaggs,

And to:      Christian C. Burden, Attorney for Smoothie King Franchises, Inc.
                101 East Kennedy Boulevard, Suite 2000
                Tampa, FL 33602

                Nicole Skaggs, pro se
                3810 75th Street West, #105
                Bradenton, FL 34209

     PLEASE TAKE NOTICE that the Plaintiff, Steven M. Tucci, by and through his undersigned attorney, has attached hereto the original of his answers to Defendant Smoothie King's Interrogatories to Plaintiff.

     WE HEREBY CERTIFY that the original and a copy of the Interrogatory Answers have been provided to the Defendant Smoothie King, and a copy to the

4.4

Defendant Nicole Skaggs. at the above stated addresses **by U.S.** Mail. postage prepaid. on the 5th day of April, 2002.

**W.R. KLEIN, P.A.**

William **Randolph** Klein
Attorney **for Plaintiff**
Florida **Bar No.** 211265
1900 **Main Street,** Suite 310
Sarasota, **FL 34236**
(941) 365-**1930**
Fax: (941) **953-368**5

## ANSWERS TO DEFENDANT SMOOTHIE KINGS INTERROGATORIES TO PLAINTIFF

1.  No assistance provided.

2.  No.

3.  Not applicable.

4.  I have had no personal communication with **Smoothie King** regarding forged signatures. Following letter from attorney Ann K. Bloodhart of December 3, 1998, my attorneys communicated through her.

5.  No communication with Nicole Skaggs. The issue was addressed at her deposition through my attorney.

6.  Infinitek, Inc. Ultimate Goal, Inc. U.G. Enterprises, Inc. Personal Best.

7.  (a)  Exhibit A (Guaranty Agreement): at my deposition of June 16, 2000

    Exhibit B (Guaranty): Following December 3, 1998, letter from attorney Ann K. Bloodhart was my first knowledge that such documents existed.

    (b)  Exhibit A: first came into my possession at my deposition of June 16, 2000, by attorney Philip Hammersley when he questioned if I had signed that document.

    Exhibit B: first came into my possession sometime in December 1998 when requested by my attorneys at that time through the discovery process.

8.  The lawsuit my wife and I filed against Eric and Brad Long, The Long Property Group, Inc., Sarasota Sports, Inc., and Tu-Long, Inc., in the Circuit Court of the Twelfth Judicial Circuit, Sarasota County, Florida, case number 98-3474 CA-01. A copy of the Amended Complaint will be provided.

None other, except Ishmael Baalshem case, Sarasota County Court case no 91-1517-BP, OMNI Publishing v Ishmael Ball Shem. I was not personally involved. The party was Sports Rehab which my wife owns.

9.  From Saturday, July 19th through July 25th, 1997, I stayed at Cabot Lodge, 3726 S.W. 40th Blvd., Gainesville, Florida, 32608, Osceola County.

10.     1447 Peregrine Point Drive, Sarasota, Florida 34231, Sarasota County.

11.     (a)     By December 3, 1998, letter from attorney Ann K. Bloodhart.

        (b)     Attorney Ann K. Bloodhart.

        (c)     Steven M. Tucci.

        (d)     by certified letter.

        (e)     See letter, copy attached.

12.     I cannot provide above information since I divested my stock on December 11, 1998, and no longer was involved with R.T. Smoothy operations. However, John Rocco, President of R.T. Smoothy's Corp. angrily notified me of various harassments which did occur which involved the throwing of stock from shelves and the teenage boys yelling "compliments of Smoothie King." In addition Smoothie King literature was posted over R.T. Smoothy's door and windows. Furthermore, Brad Long had samplings done at the Plaza Ranch Plaza by the R.T. Smoothy store criticizing R.T. Smoothy's products.

13.     (a)     SKFI through attorney Ann K. Bloodhart threatened to enforce the terms of documents (Exhibits A & B) forcing me to sell my interest in R.T. Smoothy's Corporation and not actively participate in the business of that corporation. Also Richard Leveille led me to believe that SKFI would look into matters regarding the Smoothie King & take corrective actions regarding the Sarasota store and the mismanagement by the Long's and Nicole Skaggs.

        (b)     Anne K. Bloodhart;  Richard Leveille.

        (c)     Ann K. Bloodhart, 12-3-98;  Richard Leveille, 10-2-98.

        (d)     certified letter - Bloodhart;  telephone - Leveille.

        and of course there were multiple misrepresentations from LPG, Brad Long, and Eric Long.

14.     The mental grief, anxiety, stress, loss of appetite, inability to sleep and marital stress developed in March, 1998, following the Long's refusal to provide any records relating to the Smoothie King business. Prior to that time, I had none of the above symptoms or problems. The total lack of information regarding my investment with the Long's coupled with inability to get any assistance from Smoothie King Franchise obviously led to a great deal of grief, anxiety, and stress which resulted in insomnia, loss of appetite, marital stress and unrelenting worries about my wife's reactions and condition. Being a medical specialist in the field of physiatry I have a great expertise in

2

treating stress, insomnia, anxiety, appetite anomalies **and the dys**function that accompany them. I used trancutaneous electroacupuncture, biofeedback, exercise, naturopathic and prescriptive medication, relaxation techniques and **listened to ma**ny stress reduction tapes. I also participated in nutritional changes and **positive imag**ery techniques.

15.     (a)     The only person I had contact with at **Smoothie** King Francise was Richard Lovell. We talked on October 2, 1998. **I express**ed an interest to consider opening various Smoothie King **franchises in the** Bradenton, Sarasota, and Charlotte areas. No return calls from Richard. **Final** talking was in November 1998.

    (b)     Richard Leveille.

    (c)     Telephone.

    (d)     Richard Leveille.

    (e)     Telephone.

    (f)     No documents. Mr. Leveille in October **promised** to send information regarding Sarasota store and other possible opp**ortunities**. However, he never replied and in fact in November 1998 changed **his mind** stating that Eric and Brad Long could possibly open other area franchises **without** my consent. Mr. Leveille requested I and the Longs sell our rights.

16.     John Rocca, Andrea Rocca, Christy Rocca, **Janine Rocca,** Mari Tucci, Alexander Tucci, Michael Tucci, **and** Lara Tucci.

17.     (a)     8/4/98  -  $10,000
               9/17/98  -  $10,000
               10/15/98  -  $15,000
               11/30/98  -  $20,000

    (b)     Bradenton
               Port Charlotte

    (c)     See (a)

    (d)     December 11, 1998

18.     No other documents to my knowledge.

19.    December 3, 1998, letter from Ann K. Bloodhart. **Guaran**ty forgery of February 25, 1998.  Guaranty Agreement forgery of July 22, 1997.  **Single** page of notes & dates re Richard Leveille.  The actual filed law suit.

### VERIFICATION/JURAT

_Steven M. Tucci_
Steven **M.** Tucci

STATE OF FLORIDA          )
                          )   SS
COUNTY OF SARASOTA  )

Sworn to and subscribed before me this 3rd day of **April, 2002,** by Steven M. Tucci, who is personally known to me and who did take an oath.

Notary Public
My commission expires

William Randolph Klein
My Commission CC870221
Expires September 9, 2003

3400 CITY CENTER                        Consulting Office, Beijing China
33 Sixth Sixth Street
Minneapolis, MN 55402-3796

612 343-2800
Fax: 612 333-0066
Web Site: www.gpmlaw.com

Ann K. Bloodhart
612 343-2861
ann.bloodhart@gpmlaw.com

December 3, 1998

<u>**By Federal Express**</u>

Mr. Steven Tucci
1447 Peregrine Point Drive
Sarasota, FL 34231

Re:  R.T. Smoothy's

Dear Mr. Tucci:

This law firm represents Smoothie King Franchises, Inc. ("SKFI"). It is my understanding that you are the 33 percent owner of Sarasota Sports, Inc. ("Sarasota Sports"), the SMOOTHIE KING® area developer for certain portions of Manatee and Sarasota counties. It is also my understanding that on March 2, 1998, you executed a Guaranty of Sarasota Sports' Area Development Agreement and Franchise Agreement. Under that Guaranty, you obligated yourself to "the timely performance of each term, covenant and obligation of the Developer/Franchisee set forth in the Area Development Agreement and/or Franchise Agreement." Moreover, you acknowledged that SKFI allowed you to "enter into this Guaranty Agreement instead of individually executing the Area Development Agreement and/or Franchise Agreement as a matter of convenience to [you], and [you] agree[d] to be bound by the provisions of the Area Development Agreement and/or Franchise Agreement relating to non-competition and confidentiality as if those provisions were fully set forth herein."

As the Guaranty makes clear, two of your most important obligations under the Area Development Agreement and Franchise Agreement are to keep confidential: information confidential (Area Development Agreement Article VII; Franchise Agreement Article VI) and not to compete with SKFI or any of its franchisees (Area Development Agreement Article XI; Franchise Agreement Article XVII.). In fact, the Franchise Agreement could not be more clear: "During the term of this Agreement,

Gray, Plant, Mooty, Mooty & Bennett, P.A. Attorneys at Law

Mr. Steven Tucci
1447 Peregrine Point Drive
Sarasota, FL 34231
Page 2
December 3, 1998

except as otherwise approved in writing by Franchisor, Franchisee shall refrain from
competing with Franchisor or other franchisees of Franchisor or engaging in any other
business similar to that which is the subject of the franchise[.]" (Franchise Agreement,
17.3.1.)

SKFI has been informed that despite those clear obligations, you are preparing to
open smoothie stores in the near future under the name "R.T. Smoothy's." If this is the
case, please be advised that your involvement in such stores is a clear violation of your
Guaranty for which SKFI would be damaged. SKFI does not consent to your opening of
these stores. By the end of the day on Monday, December 7, 1998, please advise me as to
whether you will voluntarily agree not to open these stores. If you refuse, SKFI will
consider all of its legal options, including a lawsuit for injunctive relief and damages. If
legal recourse is pursued, please be advised that SKFI will also seek to recover its
attorneys' fees from you, as provided for in the Guaranty.

If you have any questions, please do not hesitate to call. If you have not contacted
an attorney, I strongly urge you to do so. I look forward to hearing from you or your
attorney, if you have one.

Very truly yours,

GRAY, PLANT, MOOTY,
MOOTY & BENNETT, P.A.

By _Ann K Bloodhart_
Ann K. Bloodhart

STEVEN M. TUCCI,           )
an individual,              )
                       )
        Plaintiff,        )
                       )
vs.                      )   **Case No.:** 8:00CV785-T-17E
                       )   **Judge:** Elizabeth A. Kovachevich
SMOOTHIE KING FRANCHISES, INC.,  )   **Magistrate:** Thomas B. McCoun III
a Louisiana corporation, and **NICOLE**  )
**SKAGGS**, an individual,       )
                       )
        Defendants.     )
_____/

## DEFENDANT'S FIRST SET OF INTERROGATORIES
## TO PLAINTIFF STEVEN M. TUCCI

Defendant, SMOOTHIE KING FRANCHISES, INC., by and through its undersigned attorneys and pursuant to Rule 33, Federal Rules of Civil Procedure, hereby requests that Plaintiff, Steven M. Tucci, answer or otherwise respond to the Interrogatories numbered 1 through 19 listed below within thirty (30) days of service of this request in accordance with the following definitions and instructions, along with a certification stating that the answers to these Interrogatories are complete and in accordance with the request, signed by the Plaintiff. As used in this request, the following instructions and definitions shall apply:

### INSTRUCTIONS

A. Pursuant to Rule 33 of the Federal Rules of Civil Procedure, you are to furnish all information available to you, and to your agents and employees, in answering the following Interrogatories. You are to designate which of such information is not within your personal

knowledge, and as to that information, you are to state the **name and** address of every person from whom it was received, or, if the source of the information is **documen**tary, a full description of the document including its location.

B.     If any information required to answer any **Interrogatory** is withheld because you claim such information is privileged or is contained in a privileged **document** and/or communication:

(1)     Identify each such document and/or **communic**ation;

(2)     Set forth the privilege and the **factual basis** upon which the privilege is claimed; and

(3)     State the paragraph of the Interrogatory **to** which each document and/or communication is responsive.

C.     When used in the course of an enumeration **of items** as to which documents or information are requested, the words "and" and "or" are to **be construe**d as requesting documents or information as to each item in the enumeration, the same **as if the entire** request had been addressed solely to that item.

D.     When an Interrogatory or any of its sub-**parts calls for** you to "set forth the factual basis" of one of you allegations, answers or contentions, **that request** calls for you to set forth each fact and identify each document and oral communication **which** you believe may support your allegation, answer or contention and identify each person **who** you believe may possess facts supporting your allegation, answer or contention.

E.     Any term used in the singular shall be deem**ed to include** the plural where appropriate and vice versa.

F.     Whenever an Interrogatory herein requires **you to desc**ribe an act or action, omission,

meeting, conference, discussion, occurrence, happening, instance or event, you are to provide a full

description thereof, including a statement setting forth (i) the date and place thereof; (ii) the identity

of each oral communication involved and each document which refers to or which was prepared or

made during the course thereof or as a consequence thereof; and (iii) the identity of all persons who

were witnesses or participants.

G.    Whenever an Interrogatory calls for information with respect to "each" one of a

particular type or class of matters, events, persons, or entities, of which there is more than one, you

are required to separately list, set forth, or identify for each thereof all of the information called for.

## DEFINITIONS

As used herein:

A.    "Address" refers to the present or last known street name and number, city or town,

state and zip code.

B.    "Document" refers to, by way of illustration and not by way of limitation, the

following items, whether printed or recorded or reproduced by any other mechanical process, written,

produced by hand or produced by or stored in a computer, regardless of origin or location: books,

records of telephone conversations, summaries or records of personal conversations or interviews,

applications, booklets, brochures, catalogues, circulars, magazines, pamphlets, periodicals, bulletins,

instructions, minutes, other communications (including, but not limited to, inter- and intra-office

communications), purchase orders, bills of lading, bid tabulations, questionnaires, surveys, contracts,

agreements, options to purchase, memoranda of agreements, assignments, licenses, books of account,

orders, invoices, statements, bills, checks, vouchers, ledger sheets, accounts, journals, canceled

checks, bank statements, bank passbooks, confirmations, statements of accounts, analyses, diaries,

graphs, notebooks, charts, tables, working papers, plans, indices, summaries of records of meetings or conferences, summaries or reports of investigations or negotiations, opinions or reports of accountants or consultants, data sheets, data processing cards, photographs, photographic negatives, phono-records, tape recordings, discs, wire recordings, transcripts of recordings, drawings, motion picture film, advertisements, press releases, drafts, and marginal comments appearing on any such documents, all other written or printed matter of any kind, and all other data compilations from which information can be obtained and translated if necessary.

C.     "Identify," "identity," or "identification" means, when used in reference to a natural person, his or her full name, home address, business address, and present or last known position, business affiliation, and job title or description. When used in reference to a company, corporation, association, partnership or any legal entity other than a natural person, "identify," "identity," or "identification" means its full name, a description of the type of organization or entity, the address of its principal place of business, and the jurisdiction of its incorporation or organization. "Identify," "identity," or "identification" means, when used in reference to a document, its description (for example, letter, memorandum, report, etc.), its title, its date, the number of pages thereof, its subject matter; the identity of its author, signer and any person who participated in its preparation, the identity of its addressee or recipient, the identity of each person to whom copies were sent and each person by whom copies were received, its present location, and the identity of its custodian. (If any such document was, but is no longer, in your possession or subject to your control, state what disposition was made of it and when). "Identify," "identity," or "identification" means, when used in reference to an oral communication, the date and time when it occurred, the place where it occurred, the complete substance of the communication, the identity of each person to whom such

communication was made, by whom such communication was made, and who was present when such communication was made.

      D.      "Oral communication" refers to any verbal conversation or other statement from one person to another, including, but not limited to, any interview, conference, meeting or telephone conversation.

      E.      "Person" or "persons" refers to a natural person, firm, proprietorship, association, partnership, corporation or any other type of organization or entity.

      F.      "Plaintiff" refers to Steven M. Tucci to whom these Interrogatories are directed, and any of his agents or former agents.

      G.      "You" or "your" refers to Plaintiff, Steven M. Tucci.

Philip V. Martino
Florida Bar No.: 0079189
Christian C. Burden
Florida Bar No.: 0065129
**PIPER MARBURY RUDNICK & WOLFE LLP**
101 East Kennedy Boulevard
Suite 2000
Tampa, Florida 33602
813/229-2111
813/229-1447 - Fax

Norman M. Leon
Specially Admitted
**PIPER MARBURY RUDNICK & WOLFE**
203 North LaSalle Street
Suite 1800
Chicago, Illinois 60601
312/368-4000
312/236-7516 - Fax
Attorneys for Defendant
Smoothie King Franchises, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by depositing same in the United States mail, postage prepaid, to:

William Randolph Klein, Esquire
**W.R. KLEIN, P.A.**
1900 Main Street
Suite 310
Sarasota, Florida 34236
Attorneys for Plaintiff

Nicole N. Skaggs
3810 75th Street West, #105
Bradenton, Florida 34209
Defendant *pro se*

on this 13th of February, 2002.

_____
Attorney

# **INTERROGATORIES**

1.    Please identify all persons participating **in or prov**iding information to you in connection with answering these interrogatories.

2.      Have you ever been convicted or pleaded **guilty or no-**contest to a felony or any crime involving false statement or pretenses?

3. If your answer to interrogatory no. "2" is **yes, please** state:

    (a)    the specific crime for which you were **convicted**;

    (b)    the date of the offense;

    (c)    the charging agency;

    (d)    the date of conviction; and

    (e)    the name of the Court rendering your **sentence** or punishment for the offense.

4. With regard to each and every communication **you** have had with Smoothie King regarding your claim that your signatures on Exhibits "A" **and "B"** to your Complaint are forged, please state:

      (a)    the *exact* date of the communication;

      (b)    the identify of the person(s) with **whom you** communicated;

      (c)    the means of communication (*e.g.*, **by letter,** memorandum, telephone call, personal meeting, etc.); and

      (d)    the identity of each document **evidenc**ing or memorializing the communication.

5.      With regard to each and every communication you have had with Nicole Skaggs regarding your claim that your signatures on Exhibits "A" and "B" to your Complaint are forged, please state:

   (a)    the *exact* date of the communication;

   (b)    the means of communicating (*e.g.*, by letter, memorandum, telephone call, personal meeting, etc.); and

   (c)    the identity of each document evidencing or memorializing the communication.

6.    Please identify all "other business ventures" **as alleged** in paragraphs 12 and 13 of your Complaint.

7. With regard to the allegations of paragraph **16 of your** Complaint, please describe in detail the circumstances of your becoming aware of Exhibits **"A" and** "B" to the Complaint. In your answer, please include:

    (a)    the exact date of your discovery of **Exhibits** "A" and "B"; and

    (b)    the manner by which Exhibits "A" **and "B"** came to be in your possession (*i.e.*, response to discovery requests, **voluntary** disclosures, examination of corporate records, etc.).

8.      For the past ten years, please identify all **court, arbi**tration, or dispute resolution proceedings to which you have been a party. For each **proceeding so** identified, please state:

        (a)      the name of the Court where the **proceeding** was filed;

        (b)      the complete style of the case;

        (c)      the case number;

        (d)      the date the proceedings were institut**ed; and**

        (e)      each cause of action alleged or plead**ed.**

9.    Please state your physical location (by **address, city,** state and county) for the time period July 20, 1997 through July 25, 1997.

304960-000002
407168

15

10.    Please state your physical location (by **address, city,** state and county) for the time period February 22, 1998 through February 27, 1998.

11.    With regard to the allegations of your **Complaint, para**graphs 35, 36, 37, 46, 52, 53, 54 and 60, please state:

    (a)    the date or dates on which Smoothie **King threa**tened to enforce Exhibits "A" and "B" to the Complaint;

    (b)    the identify of person or persons **making such** threats;

    (c)    the recipient(s) of any such threats;

    (d)    the means of communicating the threat **(letter,** memorandum, telephone, etc.); and

    (e)    the identify of all documents **making such** threats or memorializing such threats.

12.    With regard to the allegations of your **Complaint** claiming that Smoothie King harassed employees of the R.T. Smoothy's Stores (*see, e.g.,* **paragrap**hs 36 and 37), please state:

    (a)    the *exact* date or date(s) of the **harassment;**

    (b)    the identity of each person causing or **directing** the harassment;

    (c)    the *exact* nature of the harassment; **and**

    (d)    if you filed a police report or if **one was filed** of which you are aware, the identity of the investigating officer **and identity** of the agency or department with which the investigating officer **was empl**oyed.

13.    With regard to the allegations of Count IV **of your** Complaint, please state:

    (a)    the *exact* misrepresentation(s) which **you claim** was made;

    (b)    the identity of the person(s) who **made the mis**representation(s);

    (c)    the *exact* date of the misrepresentation; **and**

    (d)    the means of communicating the **misrepresen**tation (letter, memorandum, telephone, etc.).

14.    Please identify all practitioners of the healing **acts,** therapists, and mental health practitioners whom you have consulted for mental grief, **anxiety, stress**, loss of appetite, inability to sleep or marital problems for the years 1995 to the present.

304960-000002
407168

15. With regard to the allegations of your **Complaint** claiming that you requested and were refused the opportunity to open Smoothie King franchises, please state:

      (a)    the date or dates of each request;

      (b)    the identity of person to whom your **request** was addressed;

      (c)    the means or method of your request (**letter,** memorandum, telephone, etc.);

      (d)    the identity of the person(s) refusing **your request**(s);

      (e)    the means or method of the denial **of your** request (letter, memorandum, telephone, etc.); and

      (f)    the identity of all documents conveying or memorializing such requests or the denial of such requests.

16.     Please identify all shareholders in R.T. Smoothy's corporation with whom you claim your relationship was interfered with by your Complaint.

17.   For each R.T. Smoothy store in which you **have invest**ed, please state:

(a)   the date of your first investment for *each* location;

(b)   the *exact* physical address for *each* **location;**

(c)   the amount (in dollars) of your **investment for** each location; and

(d)   the date of termination, divestiture **or sale** of your investment for each location.

18.      Other than Exhibits "A" and "B" to the Complaint, please state whether you claim your signature has ever been forged and, if so, further state the identity of the documents on which it was forged.

19.    Please identify all documents which you have **relied up**on, consulted, or reviewed in furnishing your answers to any of the foregoing interrogatories.

**STEVEN M. TUCCI**

STATE OF _____

COUNTY OF _____

      Sworn to and subscribed before me this _____ **day of** _____, 2002, by Steven M. Tucci, who is personally known to me or has produced _____ as identification.

<table>
<tr><td></td><td>Printed Name:_____</td></tr>
<tr><td></td><td>**NOTARY PUBLIC**</td></tr>
<tr><td>(Notarial Seal)</td><td>Commission No.:_____</td></tr>
<tr><td></td><td>State of _____ at Large</td></tr>
<tr><td></td><td>My Commission Expires:_____</td></tr>
</table>

Due to the physical nature of exhibit, it is not scanned; please see case file.